## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-09-132 |
| | § | |
| FRED  JOSEPH COOPER, | § | |
| | § | |
| Defendant-Petitioner. | § | |
| | § | |
| | § | |
| CIVIL ACTION H-14-2816 | § | |

### MEMORANDUM AND OPINION

The movant, Fred Joseph Cooper, seeks habeas corpus relief under 28 U.S.C. § 2255, challenging a 2010 conviction. The conviction arose from a superseding indictment charging Cooper with possessing 500 grams or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) (Count One); possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two); possessing five grams or more of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count Three); possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count Four); and being a convicted felon possessing a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Five).  (Docket Entry No. 53, pp. 1-5).

On September 1, 2010, a jury found Cooper guilty on all five counts. (Docket Entry No. 86). On October 3, 2011, the court sentenced Cooper to serve concurrent 121-month prison terms on Counts One and Three and 120 months on Count Five; 60 months on Count Two, to run consecutive

to the sentences on Count One, Three and Five; and 300 months on Count Four, to run consecutive

to the prison terms on the other counts, for a total of 481 months.  (Docket Entry No. 119).

The United States Court of Appeals for the Fifth Circuit affirmed the conviction and sentence

on April 26, 2013. *See United States v. Cooper*, 714 F.3d 873 (5th Cir. 2013).  The Fifth Circuit held

that: (1) any ambiguity in the indictment charging possessing a firearm in furtherance of a drug-

trafficking crime was cured by the indictment's captions; (2) the district court did not abuse its

discretion in denying the defendant's motion to strike a juror for racial bias; (3) the defendant was

not entitled to lesser-included-offense instruction on simple possession of crack cocaine; (4) any

error in the government's questions to a witness about the defendant's consent to a warrantless

search was harmless; and (5) the evidence was sufficient to support the firearms convictions.  The

Supreme Court denied Cooper's petition for a writ of *certiorari* on October 7, 2013.  Cooper filed

this timely *pro se* motion to vacate his convictions and sentence, (Docket Entry No. 168, 09-cr-132),

and the government answered and moved for dismissal or summary judgment. (Docket Entry No.

173).

Based on careful consideration of the pleadings, the motion and response, the record, and the

applicable law, the court grants the respondent's motion for summary judgment, denies Cooper's

§2255 motion, and, by separate order, enters final judgment dismissing the civil case.  The reasons

for the rulings are explained below.

## I.    Background

### A.    Cooper's Claims

Cooper moves to set aside his convictions and sentences on two grounds.  The first is that

his conviction on the two counts charging him with possessing a firearm in furtherance of a drug-

trafficking offense violated his right to be free from double jeopardy, making his 300-month prison sentence on Count Four unconstitutional. The second is that his appellate counsel provided ineffective assistance by raising on appeal the adequacy of the indictment charging Cooper with violating 18 U.S.C. § 924(c)(1)(A) and by failing to raise the double jeopardy violation.

Each ground is analyzed under the applicable legal standards.

### B.     The Legal Standards Under § 2255

Relief under 28 U.S.C. § 2255 requires a petitioner to show that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) the sentence "was in excess of the maximum authorized by law"; or (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255 (2000). A motion to vacate "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 (1974); *Hill v. United States*, 368 U.S. 424, 428 (1962).

To obtain postconviction relief in a collateral attack on a ground not raised at trial, a defendant must show either (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see United States v. Frady*, 456 U.S. 152, 167-68 (1982), or (2) that he is actually innocent. *United States v. Shaid,* 937 F.2d at 228, 232 (5th Cir. 1991). "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999). To prove actual innocence, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him." *Id.* at 912 (citations and quotations omitted).

## II.    Factual Background

The factual background is taken from the trial testimony. On August 19, 2008, officers from the Narcotics Division of the Houston Police Department set up surveillance in a shopping center parking lot in Houston in an area known for narcotics activity. The surveillance centered on a Bally's Fitness Club parking lot. According to Officer Ralph Walker of the Houston Police Department Narcotics Division, he and his fellow narcotics officers had apprehended drug traffickers near Bally's parking lots throughout Houston.

During the August 19 surveillance, Walker and his colleagues saw a 2008 white Chevrolet Avalanche driven around the lot in a suspicious manner.  The car went around the lot, parked once or twice, and finally stopped. The driver talked on his cellphone throughout that time. When the vehicle stopped, another individual walked up and got in the Avalanche.  Both the driver and passenger were talking on their cell phones.  Officer Walker later identified the person who got into the vehicle as Cooper. The driver was identified as Troy Booker.

After a brief conversation inside the Avalanche, Cooper got out and returned to his vehicle, a white 2004 Chevrolet Tahoe, which was parked in the next space.  Booker and Cooper drove their vehicles out of the lot, with Cooper in the lead.  Walker and his team followed them to a house, where the vehicles stopped.

Cooper got out of his Tahoe, appeared to unlock a gate, and walked into the house.  Officer Walker testified that engine appeared to be running.  Cooper came out of the house a few minutes later, carrying a white grocery bag.  Cooper walked to the passenger side of the Avalanche and put the white grocery bag in the vehicle.  Cooper then returned to his Tahoe and both vehicles drove away.

The surveillance team split up.  One group followed Cooper in the Tahoe, and the other followed Booker in the Avalanche.  Walker followed Cooper.  Walker testified that Cooper drove slowly, often just 20 miles per hour, in and out of a residential subdivision. He took a circuitous route to a gas station, where he pulled in next to the pumps and got out of his car as if to get gas. Walker saw Cooper was looking to the sides and rear of his vehicle as he drove and surmised that Cooper was trying to see if anyone was following.

Officer Daniel Garza saw Cooper roll through a stop sign. Officer Joseph Oliver of the North Division Tactical Unit was assigned to execute a traffic stop.  Oliver asked Cooper for his license and identification and whether he had any weapons. Cooper replied that he did not. Officer Oliver asked if he could confirm that by looking inside the vehicle.  Cooper replied he had nothing to hide and consented to a vehicle search.

Officer Chapman searched the Tahoe while Officer Oliver did a pat-down of Cooper. Officer Oliver felt a bulge in one of Cooper's pockets, and found a wad of currency and two cellphones. Officer Oliver asked Cooper to take a seat in the back of his patrol car while he and Chapman finished searching the Tahoe.

Officer Oliver was waiting for a response on a records check when Officer Chapman found currency in the Tahoe console. Officer Oliver later learned that the amount was $1,724. Cooper told the officers that it was his rent money.  The officers summoned Officer Richard Corrales and his trained drug dog, Donja, to help search Cooper's vehicle.  Donja alerted on the center console, where the officers had discovered the currency.

Officers Oliver and Chapman received instructions to arrest Cooper.  A frisk revealed a third cellphone.  Officer Oliver discovered that Cooper had placed a call on this telephone while seated

in the back seat of the patrol car, during the search of the Tahoe.

Officers Robert Morales and Jose Benavides followed Booker in the Avalanche. Booker drove north on an interstate at a high speed until he stalled in traffic. The tactical units then turned on their emergency lights, executed a traffic stop, and took Booker into custody. Officer Benavides saw a white plastic bag in the Avalanche. The contents field-tested positive for cocaine and weighed approximately 259 grams.

Approximately 20 minutes after Officer Oliver stopped Cooper, Officer Daniel Garza arrived, advised him of his constitutional rights, and briefly interviewed him. When asked where he had come from, Cooper said he was coming from Bally's Fitness Center, then said he had not stopped at his house before driving to the gas station. The officers knew that neither statement was true. Cooper told Officer Garza that the money in his pocket and in the Tahoe belonged to him.

Officer Walker obtained a warrant to search Cooper's residence. The officers' approach to the house was initially obstructed by a pit bull dog. Sergeant Lewis used a spray, and the dog retreated into the house. The officers found two other pit bull dogs in a cage in the living room.

The officers knocked on the front door, but no one responded. A battering ram did not work, but the officers were able to enter through a side door to the kitchen. In the kitchen, Officer Garza found and seized a large amount of powder cocaine in clear plastic baggies and in a Tupperware tub. The baggies weighed 127.10 grams, 127 grams, 127.2 grams, 151 grams, and 127.2 grams. Officer Walker discovered a tin plate, a scale, a razor blade in front of the scale, and some cocaine base in a zip lock bag. Near the crack cocaine, the razor blade, and the plate, the officer found a microwave with a whisk on top, as well as a measuring bowl, a strainer, and a plastic bottle, all covered in cocaine residue. Officer Walker concluded that the microwave, strainer, whisk, and plate were used

to make crack cocaine.

The narcotics dog, Donja, also alerted on a safe in a bedroom closet. The safe contained $45,070 in United States currency. Officer Benavides found a loaded .22 caliber pistol on a night stand in that bedroom, with some extra ammunition. Officer Benavides also saw a loaded rifle leaning up against the bedroom wall. Inside the night stand, the officers found a loaded .45 caliber pistol and currency of various denominations. Officer Benavides testified that the firearms were readily accessible and were the type of weapons often found with drugs and drug proceeds. He identified the firearms and testified that each was manufactured out of Texas or out of this country.[1]

### III.    Analysis

#### A.    The Double Jeopardy Claim

Cooper argues that using more than one gun in a drug-trafficking offense cannot support multiple convictions for § 924(c) violations. (Docket Entry No. 169, p. 2). Citing *United States v. Privette*, 947 F2d 1259 (5th Cir. 1991), Cooper argues that he was arrested for a single drug offense, but was improperly convicted of the Count Four charge of violating § 924(c) as a second or subsequent conviction, resulting in a consecutive 300-month sentence. Cooper contends that when a defendant has been convicted of more than one § 924(c)(1) violation for possessing more than one firearm during a single drug-trafficking offense, the convictions after the first one are not "second or subsequent" convictions under the statute. Cooper argues that the government violated his double jeopardy rights by not linking each § 924(c) count to separate drug-trafficking crimes.

---

[1] The .22 caliber revolver, an RG Model 23, was manufactured in Florida. The .45 caliber pistol, a Taurus semiautomatic .45 caliber, was manufactured in Brazil. The rifle, a Marlin .30-30 with obliterated serial numbers, was manufactured in Connecticut.

18 U.S.C. § 924(c)(1) provides:

> **(c)(1)(A)** Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
>
> **(i)** be sentenced to a term of imprisonment of not less than 5 years;
>
> **(ii)** no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1).

In *United States v. Privette*, the indictment charged two drug offenses and two firearms offenses. Each firearms count was supported by drug-trafficking crimes committed by either the defendant or a coconspirator. The Fifth Circuit explained that possessing more than one gun during a single drug-trafficking crime will not support multiple § 924(c) convictions and sentences:

> Multiple sentences under § 924(c) must be based upon the number of drug trafficking crimes in which firearms were used. Drug trafficking crimes separated by the measure of the double jeopardy clause can each support § 924(c) convictions. . . . A conspiracy and its target crimes are separate offenses for these purposes. . . . We agree with the government that [the defendant's] conviction of conspiracy and his conviction of possession with intent to distribute could each support a separate § 924(c) conviction and sentence.
>
> The question we must decide here is whether the firearm counts must be linked to a particular drug trafficking offense. We conclude that to avoid violating double jeopardy principles each

firearms offense must be sufficiently linked to a separate drug trafficking offense to prevent two convictions under § 924(c) on the same drug offense.

. . . .

We cannot determine whether the jury based both convictions on the use of firearms in the conspiracy. If the jury convicted [the defendant] twice for using firearms during the conspiracy, [the defendant] would be doubly punished for the same crime.

The firearm charge must be tied to a specific drug trafficking offense to avoid the possibility that the jury will base two firearms charges on the same drug trafficking crime. The jury is able to do so whether the substantive drug offenses listed in the firearms charges are identical or overlapping.

The necessary linkage between a firearms charge and a drug trafficking offense is best accomplished by clearly identifying in the indictment the drug offense supporting each firearms count. We do not say that the required linkage cannot be supplied by jury instructions or can never be determined by the facts of a case. For example the facts of a case might permit no reasonable conclusions of multiple punishment. The key issue is whether a reviewing court can determine from the jury verdict whether the convictions violate double jeopardy principles.

*Privette,* 947 F.2d at 1262-63.

In *Blockburger v. United States,* 284 U.S. 299 (1932), the Supreme Court considered whether two drug sales by the defendant to the same person on two different occasions were one offense. The Court stated that ". . . the test to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not," and found that each sale was a separate offense. The Court then examined whether selling without a tax stamp was a separate offense from the sale itself. The Court found that separate sections of the drug statute made both acts offenses. "The plain meaning of the provision is that each offense is subject to the penalty prescribed."

The superseding indictment charged Cooper as follows:

COUNT ONE (Possession with Intent to Distribute a Controlled Substance)
On or about August 19, 2008, in the Houston Division of the Southern District of Texas, FRED JOSEPH COOPER, defendant herein, unlawfully, knowingly, and intentionally possessed with intent to distribute a controlled substance. This violation involved a mixture and substance containing 500 grams or more of cocaine, a Schedule II controlled substance.
In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii)(II).

COUNT TWO (Possessing a Firearm in Furtherance of a Drug Trafficking Crime)
On or about August 19, 2008, in the Houston Division of the Southern District of Texas, FRED JOSEPH COOPER, defendant herein, knowingly possessed a firearm, that is, a Taurus .45 caliber pistol, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense described in Count One hereof.
In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

COUNT THREE (Possession with Intent to Distribute a Controlled Substance)
On or about August 19, 2008, in the Houston Division of the Southern District of Texas, FRED JOSEPH COOPER, defendant herein, unlawfully, knowingly, and intentionally possessed with intent to distribute a controlled substance. This violation involved a mixture and substance containing 5 grams or more of cocaine base (crack cocaine), a Schedule II controlled substance.
In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).

COUNT FOUR (Possessing a Firearm in Furtherance of a Drug Trafficking Crime)
On or about August 19, 2008, in the Houston Division of the Southern District of Texas, FRED JOSEPH COOPER, defendant herein, knowingly possessed a firearm, that is, a Marlin 30 - 30 lever action rifle, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense described in Count Three hereof.
In violation of Title 18, United States Code, Section 924(c)(1)(C)(i).

COUNT FIVE  (Felon in Possession of a Firearm)
On or about August 19, 2008, in the Houston Division of the
Southern District of Texas, FRED JOSEPH COOPER, defendant
herein, having been convicted of a crime punishable by imprisonment
for a term exceeding one year, did knowingly possess in and affecting
commerce a firearm, that is, a Taurus .45 caliber pistol, an RG
Industries .22 caliber revolver, a Marlin 30 - 30 lever action rifle,
approximately 43 rounds of live Remington .22 caliber ammunition,
approximately 26 rounds of live Winchester .22 caliber ammunition,
approximately 2 rounds of live CCI .22 caliber ammunition,
approximately 1 round of live Federal .22 caliber ammunition,
approximately 50 rounds of live Winchester .45 caliber ammunition,
and approximately 20 rounds of live Winchester .30 - 30 caliber
ammunition, which had been shipped in interstate and foreign
commerce.
In violation of Title 18, United States Code, Section 922(g)(1).

(Docket Entry No. 53).

Count One of the superseding indictment charged Cooper with possessing 500 grams or more

of cocaine with the intent to distribute.  Count Two charged Cooper with possessing a Taurus .45

caliber pistol during and in relation to the Count One drug-trafficking crime.  Count Three charged

Cooper with possessing 5 grams or more of cocaine base, or crack, with the intent to distribute.

Count Four charged Cooper with possessing a Marlin 30 - 30 lever action rifle during and in relation

to the Court Three drug-trafficking crime. The indictment alleged that Count Two related to the

offense charged in Count One, and Count Four related to the offense charged in Count Three.

(Docket Entry No. 86).

Counts Two and Four are supported by more than one predicate drug-trafficking offense. The

two drug-trafficking crimes occurred on the same date but are separate offenses under the statute.

Count One and Count Three, the two predicate drug-trafficking crimes, satisfy the *Blockburger* test.

Count One requires proof of the intended distribution of 500 or more grams of cocaine. Count Three

requires proof of the intended distribution of 5 grams or more of cocaine base.  Count Two and Count Four each allege the use of a different weapon, specifically linked to separate drug-trafficking crimes. Cooper's conviction on Count Four was a subsequent finding of guilt by a jury under § 924(c)(1)(C), making him subject to the consecutive sentence required under 18 U.S.C. § 924(c)(1)(C)(i). Cooper is not entitled to relief on this claim.

In a related claim, Cooper contends that the evidence did not show that he possessed a firearm during, in relation to, or in furtherance of a drug-trafficking offense. Cooper was arrested several blocks away from his residence, where the firearms were later found.  Cooper argues that he did not have constructive or actual possession of a firearm when he was under arrest and in custody. Cooper argues that the location of a firearm in his home is insufficient to establish his constructive possession of that firearm in furtherance of a drug-trafficking crime.

Under 18 U.S.C. § 924(c), the government must prove that a defendant used or carried a firearm during and in relation to a drug-trafficking crime, or possessed a firearm in furtherance of a drug-trafficking crime conviction. In a § 924(c)(1)(A) prosecution, a defendant possesses a firearm "in furtherance of the drug trafficking offense when it furthers, advances, or helps forward that offense." *United States v. Ceballos–Torres,* 218 F.3d 409, 410–411 (5th Cir. 2000).  The Fifth Circuit considers a number of factors in making this determination, including (1) the type of drug activity, (2) the type of firearm, (3) the accessibility of the firearm, (4) the proximity of the firearm to drugs or drug profits, (5) whether the firearm was loaded, (6) whether the firearm was stolen, (7) whether the firearm was possessed legally or illegally, and (8) the time and circumstances under which the firearm was found. *Id.* at 414–15.

Possession can be actual or constructive. "Constructive possession may be found if the

defendant had (1) ownership, dominion, or control over the item itself or (2) dominion or control over the premises in which the item is found." *United States v. Meza,* 701 F.3d 411, 419 (5th Cir. 2012) (internal quotation marks omitted).  Constructive possession is present when a defendant is in the vicinity of a firearm but not in actual possession of it, as when a firearm is found in his residence or in some other place over which the defendant has dominion or control. *See, e.g., United States v. Clark,* 226 F. App'x 407, 408 (5th Cir. 2007) (per curiam) (unpublished) (the evidence was sufficient to show constructive possession when the weapon was "discovered in a bag on the passenger floorboard of [the defendant's] vehicle" and officers "saw him place in the bag a shiny object that appeared to be a gun"); *United States v. Millikin,* 136 F.3d 136, 1998 WL 30008, at *1 (5th Cir. 1998) (per curiam) (unpublished) (affirming a constructive possession finding based on evidence that defendant "had knowledge of the weapons in his house, and at least one of the firearms was found next to his bed"); *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir. 1979) (holding that a defendant's "dominion and control over his own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession"). Even when a residence is jointly occupied, a firearm in plain view will support a "plausible inference that the defendant had knowledge of and access to the illegal item." *United States v. Meza,* 701 F.3d 411, 419 (5th Cir. 2012). *Id.* at 421.

When the officers searched Cooper's house, they discovered three firearms in a bedroom. Two of the firearms were in plain view. The .22 caliber revolver was on top of the night stand, and the 30 – 30 caliber rifle was leaning against the wall next to the night stand.  Inside the night stand, officers found the Taurus .45 caliber semiautomatic pistol, rounds of live ammunition, $3,960 in currency, and the defendant's driver's license. All three firearms were loaded. The officers

discovered $45,070 in currency and various documents belonging to Cooper in a safe in the bedroom closet. Officers discovered more than one kilogram of cocaine powder, 41.9 grams of crack cocaine, drug paraphernalia, and additional currency in the kitchen area. There was ample evidence for the jury to find that Cooper possessed the firearms in furtherance of the drug-trafficking offenses. The amount of cocaine, the currency, the manufacturing paraphernalia, and the other items found establish Cooper's possession of both drugs with the intent to distribute.

There is ample evidence showing that Cooper possessed the Taurus .45 caliber pistol and the Marlin 30 – 30 lever action rifle in furtherance of Count One and Count Three. The evidence was sufficient to support the jury's verdict. *See Ceballos–Torres,* 218 F.3d at 414–15; *United States v. Charles,* 469 F.3d 402, 407–08 (5th Cir. 2006). Cooper has not shown that he is entitled to the relief he seeks.

### B.    The Ineffective Assistance of Counsel Claim

Cooper alleges that his appellate counsel, John Riley Friesell, provided ineffective assistance by failing to raise on appeal the issue of whether the indictment was defective because Counts Two and Four were tied to the same drug conspiracy. Cooper reiterates his argument that the use of more than one firearm during a single drug-trafficking offense cannot support multiple § 924(c) convictions. Cooper argues that because the weapons listed in Counts Two, Four, and Five were linked to the same underlying drug offense, appellate counsel's failure to challenge the convictions deficient performance and was prejudicial. (Docket Entry No. 169, pp. 5-6).

Appellate counsel's performance is reviewed under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Cooper must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the

deficient performance caused Cooper prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

The first element requires Cooper to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999)(quoting *Strickland,* 466 U.S. at 688). A court's review is deferential and presumes that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Effective assistance does not mean that counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether certain approaches will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91.

To show prejudice, Cooper must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). The issue is whether the proceeding was unfair or unreliable, as a result, undermining confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998)(citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

The record reveals no basis to find a reasonable probability that, even assuming appellate counsel was deficient in failing to raise the issue on appeal, the result of the proceeding would have been different had he done so. *Wilson v. Cockrell*, 2003 WL 21672834, at *11 (5th Cir. July 17, 2003); *Duhamel v. Collins,* 955 F.2d 962, 965 (5th Cir. 1992).

Cooper's appellate counsel raised five distinct issues on appeal: (A) the sufficiency of the

Counts Two and Four; (B) improper constructive amendment of the same two counts in the jury instructions; (C) an abuse of discretion in the failure to dismiss a juror challenged for cause; (D) error in refusing to give a lesser-included-offense jury instruction on Count Three; (E) a due-process violation in the government's questions to a police officer witness at trial about whether Cooper had consented to a warrantless search of his home; and (F) that the firearms were functional. *United States v. Cooper*, 714 F.3d 876-77 (5th Cir. 2013).

Appellate counsel had the record and the government's trial memorandum when he decided not to raise this issue on appeal. This court presumes that appellate counsel determined that the argument was not likely to succeed. The record supports that conclusion. Cooper has not presented facts that, if proven, would show that his attorney's representation was deficient or caused prejudice. Cooper has not shown that he is entitled to the relief he seeks.

## III.   Conclusion

The respondent's motion for summary judgment is granted. (Docket Entry No. 173, 09-cr-132). Cooper's motion to vacate under 28 U.S.C. § 2255 is denied. (Docket Entry No. 168, 09-cr-132; Docket Entry No. 1, 14-cv-830). Final judgment dismissing Cooper's civil action, 14-cv-2816, is separately entered. Other pending motions are denied as moot.

The showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 429 U.S. 473, 483 (2000)). A petitioner makes a substantial showing when he demonstrates that his petition involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues deserve encouragement to proceed

further.  *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000).  Cooper has not made the necessary showing, and a certificate of appealability is not issued.

SIGNED on June 25, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge